# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MARGARET HAZEL TURNER, by and through Lisa Higdon, Conservator, on behalf of Turner and all persons similarly situated, | ) ) ) ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE MOODY BIBLE INSTITUTE OF CHICAGO, INC., ROCKY PAYNE, ELIZABETH BROWN, and EMMY H. KOH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 17, Plaintiff Margaret Hazel Turner, by and through Lisa Higdon, Conservator ("Plaintiff" or "Ms. Turner"), on Ms. Turner's behalf, as well as on behalf of all others similarly situated, hereby brings the following claims against Defendants The Moody Bible Institute of Chicago, Inc., Rocky Payne, Elizabeth A.S. Brown, and Emmy H. Koh, (collectively, "Defendants"), and alleges, on information and belief, as follows:

## INTRODUCTION

The Moody Bible Institute of Chicago, Inc. ("Moody") is headquartered in Chicago, Illinois and holds itself out as a Christian-based institution of higher learning, and a Christian media ministry including radio broadcasting and publishing.  *See* Moody's 2012 Form 990, attached hereto as Exhibit 1.  To finance its operations and enrich its officers and owners, Moody employs a sophisticated, but predatory scheme, which targets and causes substantial harm, particularly to vulnerable elderly residents in Georgia.  Moody's scheme spans at least 15 years and has harmed numerous people.  Moody advertises, markets, sells, and promotes estate planning and related legal services to Georgia residents.  Most of these Georgia residents are elderly and are not sophisticated in tax, real estate, or estate planning matters.

Moody and its representatives seek to convince and unduly influence Georgia testators and trust grantors to allow Moody and its representatives to review and recommend material changes to Georgia testators' and trust grantors' estate planning documents and titles to real property.  Although Moody is not lawfully registered in Georgia as a charitable organization, Defendants solicit donations from Georgia residents.  While not licensed to practice law in Georgia,

Moody and its representatives draft legal documents and facilitate the execution of such documents, their use, and their recording in Georgia.

Although Moody is not legally able to serve as a trustee, executor, or other estate plan fiduciary in Georgia, Defendants change Georgia testators' and trust grantors' estate planning documents to name Moody as trustee, executor, and/or other estate plan fiduciaries. The changes made by Defendants to the Georgia residents' estate plans eliminate or reduce existing beneficiaries' shares in the estates and/or trusts and divert interest in the testators'/grantors' assets to Moody as beneficiary, trustee, executor, and/or investment advisor of the trusts. Through a variety of tactics, Defendants persuade Georgia residents to change their estate plans without disclosing the benefit to Defendants or the detriment to testators/grantors. If any of these Georgia testators/grantors express a desire to revoke or change the estate planning documents pushed by Defendants, Moody and its representatives actively misrepresent the law and facts in an effort to dissuade the testators/grantors from doing so.

## PARTIES AND JURISDICTIONAL ALLEGATIONS

### 1.

Plaintiff is a resident of Georgia. Lisa Higdon was appointed as Guardian and Conservator of Ms. Turner by the DeKalb County Probate Court on June 11,

2015, and Letters of Guardianship and Conservatorship respectively issued to Lisa

Higdon on July 13, 2015.  True and correct copies of the Letters of Guardianship

and Conservatorship are attached hereto as Exhibit 2.

2.

Defendant Moody is a corporation organized and existing under the laws of

Illinois with its principal place of business located at 820 N. LaSalle Boulevard,

Chicago, Illinois 60610-3214.  Moody may be served by serving its Registered

Agent, National Corporate Research, Ltd., at 900 Old Roswell Lakes Parkway,

Suite 310, Roswell, Fulton County, Georgia 30076.

3.

Defendant Rocky Payne ("Payne") is a Georgia resident who resides at 17

Picketts Lake Way West, Acworth, Georgia 30101.

4.

Defendant Elizabeth A.S. Brown ("Brown") is a resident of Illinois and may

be served wherever she may be found.

5.

Defendant Emmy H. Koh ("Koh") is a resident of Illinois and may be served

wherever she may be found.

6.

At least three (3) pieces of real property at issue are located in DeKalb County, Georgia: (1) the improved property known as 1560 Milowyn Place recorded in Deed Book 23969 Page 36 in the records of the Clerk of Superior Court of DeKalb County, Georgia; (2) the improved property known as 1554 Milowyn Place recorded in Deed Book 23969 Page 33 in the records of the Clerk of Superior Court of DeKalb County, Georgia; and (3) that property known as Alta Vista Drive recorded in Deed Book 23969 Page 39 in the records of the Clerk of Superior Court of DeKalb County, Georgia.

7.

Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 & 1332(d).

## COMMON FACTUAL ALLEGATIONS

### *Introduction of Defendants*

8.

Moody is based in Chicago, Illinois and presents itself as a Christian-based institution of higher learning and media ministry.

9.

Payne presents himself as a Regional Stewardship Representative of Moody and actively works on Moody's behalf in Georgia.  *See* Linkedin Profile of Rocky Payne, attached hereto as Exhibit 3.

10.

Payne is a charismatic evangelist who cultivates and develops confidential relationships with and befriends Georgia testators and trust grantors with the intention of unduly influencing them into changing their estates to financially benefit Moody and give Moody and its representatives fiduciary control.

11.

Payne is not a lawyer and is not licensed to practice law in Georgia.

12.

Payne has improperly provided legal advice about estate planning and real estate transactions to Georgia residents for years.

13.

Brown was Vice President and General Counsel of Moody and was the head of Moody's legal department until December 2013.  Brown worked for Moody for more than 30 years.

14.

Brown is not now and has never been licensed to practice law in Georgia.

15.

Brown has improperly provided or caused to be provided legal advice about estate planning and real estate transactions to residents of Georgia for years.

16.

Brown has improperly adopted and administered a business practice of directing Moody representatives in Georgia to cultivate and develop confidential relationships with and befriend Georgia testators and trust grantors with the intention of unduly influencing them to change their estates to give Moody and its representatives fiduciary control and financially benefit Moody and Brown personally.

17.

Koh is the Assistant General Counsel of Moody.

18.

Koh is not now and has never been licensed to practice law in Georgia.

19.

Koh has improperly or caused to be provided legal advice about estate planning and real estate transactions to residents of Georgia for years.

20.

Koh has improperly adopted and administered a business practice of directing Moody representatives in Georgia to cultivate and develop confidential relationships with and befriend Georgia testators and trust grantors with the intention of unduly influencing them to change their estates to give Moody and its representatives fiduciary control and financially benefit Koh and her superiors.

***Defendants Advertise And Market Estate Planning And Related Legal Services To Georgians***

21.

Through a variety of means, Moody advertises, markets and promotes estate planning and related legal services in Georgia.

22.

For example, Moody advertises over the internet and through brochures to residents of Georgia that it "can help set up a plan for organizing your estate with a will or trust." *See* "Options for Planning" brochure, attached as Exhibit 4.   In another brochure titled "Legacy to the World," Moody promotes naming itself the trustee or successor trustee of revocable living trusts.  The brochure even touts that Moody serves as trustee in hundreds of revocable living trusts.  *See* "Legacy to the World" brochure, attached as Exhibit 5.

23.

Via its website, Moody provides a Will Planning Kit to Georgia residents

upon request. *See* Moody Webpage Printout, attached as Exhibit 6.

24.

Moody conducts estate planning seminars throughout Georgia. Until

recently, Moody's website promoted its seminars as follows:

> Moody Bible Institute Estate Planning Seminars have been conducted
> throughout the country providing information on Christian Wills, Revocable
> Living Trusts and other areas of Estate Planning. The seminar is about one-
> hour in length with time devoted to questions and answers. The seminar is
> free, and you are under no obligation.
>
> The purpose of the seminar is to encourage and challenge people to make
> adequate planning for the distribution of their estate in a Christian manner
> by remembering Christian causes in their Wills or Revocable Living Trusts.
> Moody Bible Institute has a long established Planned Giving program in
> which attorneys may be able to provide assistance to you for your estate plan
> when you have strong charitable intent for the ministries of Moody. If you
> are interested in having a jointly sponsored Trust & Estate Planning seminar
> conducted at your local church, please contact us.

*See* http://beta.moodyministries.net/crp_MainPage.aspx?id=264 (accessed as of
December 1, 2014).[1]

---

[1] After the filing of the original related case, Moody has revamped its website, has
deleted this and related estate planning pages, and has apparently sought to change
(at least publicly) its illegal practices described in this Class Action Complaint.

25.

Moody employs one or more Stewardship Representatives in Georgia who solicit and target Georgia residents, many of whom are elderly.

26.

Moody directs its representatives in Georgia to befriend, cultivate, and develop confidential relationships with Georgia residents to unduly influence the drafting and/or modification of their estate plans to financially benefit Moody and its officers and give Moody and its representatives fiduciary control.

27.

Moody also advertises its estate planning services to Georgia residents through Moody Radio South.

28.

A recording of one such broadcast from in or about 2013 could be heard here:

http://openaudiovideo.moody.edu/OSAM/OSAM/ASX/Audio/wma/Radio/WMFT/2013/RPayneGenerosityStewardship40414.asx

29.

In this radio broadcast, Payne discusses various estate planning options and encourages listeners to call or text him directly or visit the Moody website if they want more information.

30.

Other Moody representatives and/or agents take to the internet airwaves via Moody Radio to give legal advice to Georgia residents.

***Defendants Provide Estate Planning And Related Services To Georgians***

31.

Through their various advertising and marketing activities, Defendants, acting in concert, actively target and solicit Georgia testators and trust grantors with the intent of inducing and causing them to change their estate plans to include Moody as a beneficiary and/or name Moody and/or its officers as trustee/executor over trusts or last will and testaments which also name Moody as a beneficiary.

32.

Defendants, acting in concert, ask Georgia testators and trust grantors for copies of their estate planning documents, if they exist, and send those documents through U.S. Mail or email to Moody headquarters in Chicago, Illinois to be reviewed by Moody's in-house counsel.

33.

Defendants, acting in concert and as fiduciaries, then purport to review the estate plans of Georgia residents.  Then Defendants, acting in concert, send correspondence using the U.S. Mail or email to Georgia residents in which Defendants recommend or cause to be recommended that those Georgia residents heed Defendants' legal advice and materially modify their estate plans and real estate titles.

34.

Defendants, acting in concert and as fiduciaries, then draft new or materially modified estate planning, real estate, and other related legal documents for use by Georgia testators and trust grantors in Georgia, in which Moody or its representatives are named as trustee, executor, or other estate plan fiduciary.

35.

Defendants, acting in concert and as fiduciaries, send these estate planning, real estate, and other related legal documents through U.S. Mail or email and then oversee and facilitate the execution and recording of said estate planning, real estate, and other legal documents by Georgia residents.

36.

The changes recommended by Moody always benefit Moody to the
detriment of the testator, trust grantor, and/or existing trustees, beneficiaries,
executors, and investment advisors.

37.

Defendants fail to disclose Moody's substantial compensation as Executor
and Trustee and the fees to be paid to Moody's investment department for the role
of the Investment Advisor.

38.

Defendants are likewise silent as to Moody's role and compensation and fees
to be paid to Moody in managing the numerous testamentary charitable gift
annuities that Moody recommends in its proposed estate planning changes.

39.

As fiduciaries, Defendants have a duty to disclose that information.

***The Estate Planning And Related Services Provided By Defendants
Constitute The Unauthorized Practice Of Law***

40.

Acting in concert, Defendants, who are not Georgia lawyers, unlawfully
provide or cause to be provided legal advice in the areas of tax planning, estate
planning, and real estate transactions in Georgia.

41.

Defendants, acting in concert and as fiduciaries, improperly recommend that Georgia testators and trust grantors materially change their estate plans to create trusts and/or last will and testaments pursuant to which Moody or its representatives are fiduciaries, add Moody as a beneficiary, and/or designate Moody or its representatives as successor fiduciaries.

42.

When Defendants provide Georgia testators and grantors with unauthorized legal advice, Defendants do not advise the Georgia testators to keep their estate plans as is, nor do they even present that as a viable option.

43.

Defendants always recommend that Georgia testators and trust grantors revise their estate plans in a way that ultimately benefits Defendants, specifically Moody, and harms the Georgia testators, trust grantors, and/or existing beneficiaries, trustees, executors and investment advisors.

44.

Defendants do not inform the Georgia testators and trust grantors to whom they provide tax planning, estate planning, and real estate services that they are not licensed to practice law in Georgia.

45.

Defendants do not recommend that the Georgia testators and trust grantors hire a Georgia attorney to prepare or review the proposed estate plan options with them.

46.

Defendants do not disclose they are not the Georgia testators' or grantors' attorneys or that they are acting solely on their own behalf and purport to owe no duty to the Georgia testators and trust grantors.

47.

Defendants do not disclose the inherent conflict of interest arising from Moody drafting the estate documents and promoting itself to serve as a trustee, executor, and investment advisor and as a beneficiary under the estate planning options recommended to the Georgia testators and grantors.

48.

Because the conflict of interest is not disclosed, Defendants do not seek a conflict waiver from the Georgia testators and grantors, and no conflict waivers are given.

49.

A Georgia attorney could not ethically obtain such a waiver and would be prohibited from drafting the estate planning documents recommended and drafted by Moody and its representatives. *See* Ga. R. Professional Conduct 1.8(c)("A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, grandparent, child, grandchild, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.")

50.

Defendants fail to disclose the option of selecting other independent trustees, executors, investment advisors, or legal advisors instead of Moody.

51.

As fiduciaries, Defendants have a duty to disclose the information described above.

52.

Moody has been improperly providing legal advice in the area of estate planning to residents of Georgia for many years. *See generally Wachovia Bank, N.A. v. Moody Bible Inst. of Chicago, Inc.*, 283 Ga. App. 488 (2007)(litigating trust drafted by Moody for Georgia resident in 1999), attached hereto as Exhibit 7.

***The Estate Planning And Related Services Provided By Defendants Unlawfully Name Moody Or Its Representatives As Trustee, Executor, And/Or Other Estate Plan Fiduciary***

53.

Acting in concert and as fiduciaries, Defendants improperly recommend that Georgia testators and trust grantors materially change their estate plans to create trusts and/or last wills and testaments pursuant to which Moody or its representatives are fiduciaries and/or designate Moody or its representatives as successor fiduciaries.

54.

Defendants always recommend that Georgia testators and grantors revise their estate plans to name Moody and/or its representatives as a trustee, executor, or other estate plan fiduciary in the State of Georgia.

55.

Defendants do not disclose to the Georgia testators and trust grantors to whom they provide tax planning, estate planning, and real estate services that Moody is not legally allowed to serve as a trustee, executor, or other estate plan fiduciary in the State of Georgia.

56.

Defendants have a duty to disclose this information.

*The Estate Planning And Related Services Provided By Defendants Favor Defendants And Disfavor Georgia Beneficiaries*

57.

The unauthorized legal advice provided by Defendants deceptively, fraudulently, unethically, and self-servingly favors Defendants over existing beneficiaries of those Georgia testators and trust grantors.

58.

The unauthorized legal advice provided by Defendants reduces or eliminates the shares and/or interest of existing beneficiaries, while diverting some or all of the estate assets to Moody as beneficiary, trustee, executor, and/or investment advisor.

59.

Defendants, acting in concert, improperly deplete trust and estate assets meant for beneficiaries.

60.

Defendants, acting in concert, engage in theft by deception through the fraudulent and deceptive changes to the estate plans and real estate titles of Georgia testators and trust grantors to the detriment of Georgia testators and trust grantors and existing beneficiaries.

61.

Defendants, acting in concert, have implemented a business practice of training Moody employees and representatives to actively misrepresent facts and law to dissuade Georgia testators and trust grantors who subsequently express a desire to revoke or change the estate plans recommended and drafted by Defendants.

62.

In cases where Georgia trust grantors have validly revoked the trusts created by Defendants, Moody and its employees and representatives improperly ignore such revocations and fail and refuse to effectuate the Georgia trust grantors' decisions.

63.

As Trustee of the trusts Defendants have drafted, Moody is ostensibly entitled to indemnification from the trust assets to defend itself and fight any attempt to revoke and/or amend the trusts by an agent or fiduciary after a Georgia grantors' incapacity.

64.

By including these provisions in the Moody drafted trust instruments, Defendants have acted to effectively insulate themselves from bearing any legal

accountability or any financial responsibility or from being removed from office and/or having the trust instrument terminated if their scheme is ever uncovered. These consequences and/or the fact that Defendants' interests in these matters is adverse to the testator or trust grantors are not adequately disclosed to the persons affected when the Moody crafted instruments are presented to Georgia residents.

65.

Defendants have conspired to ensure that, if a grantor or a beneficiary later challenges Defendants, they are able to deplete the assets controlled by the Moody trust instruments to defend themselves.  Thus, costs of challenging Defendants' scheme fall squarely and exclusively upon the Georgia testators, grantors, and beneficiaries.

66.

Given the advanced age of most of the trust grantors or testators, Defendants know that the likely incapacity of these victims will make it extremely difficult to challenge their practices.  In fact, Defendants have drafted Moody's revocable living trust documents such that the instrument purportedly cannot be revoked by an agent, fiduciary, or court appointed agent once the grantor becomes incapacitated.

67.

The Defendants have conspired to ensure that their entitlement to fees and compensation and that Moody's beneficial interests cannot be changed, challenged, or jeopardized.

68.

Defendants have enriched themselves, either through fees, salaries, or as a beneficiary, at the expense of the Georgia testators, settlers, and other beneficiaries (prior or current).

69.

Defendants' actions have caused Plaintiff and those similarly situated substantial harm.

## OPERATIVE FACTS SPECIFIC TO NAMED PLAINTIFF

### *Defendants Targeted Turner Who Is Elderly And Mentally Impaired*

70.

Ms. Turner is currently 89 years old and suffers from dementia.  Ms. Turner's friends and family noticed memory impairment and changes in her behavior in 2011 when lunch appointments were missed and she appeared confused.

71.

On or about September 19, 2004, Ms. Turner executed her Last Will and Testament.  On or about July 13, 2005, Ms. Turner executed the First Codicil to her Last Will and Testament (collectively, "Ms. Turner's Will").

72.

Ms. Turner has no children and is cared for by her younger cousin, Peter J. Sabinske, and his longtime companion, Lisa Higdon ("Higdon").  Higdon was a beneficiary under Ms. Turner's Will.

73.

Some time prior to 2011, Payne met Ms. Turner.

74.

Around late 2012 or early 2013, following Ms. Turner's diminishing capacity, Higdon became concerned with Payne's motives involving Ms. Turner, and Higdon requested Payne not meet with Ms. Turner alone.

75.

Payne ignored Higdon's request and continued to meet alone with Ms. Turner in Ms. Turner's home.

76.

During this same period and while Ms. Turner suffered from diminishing capacity, Payne solicited Ms. Turner to change her estate plan.

77.

In early 2013, Payne asked Ms. Turner for a copy of her current Will, and Payne forwarded Ms. Turner's Will, via U.S. Mail or email, to Moody's corporate office in Chicago, Illinois for review and recommendations.

***The February 20 Letter***

78.

On or about February 20, 2013, after reviewing Ms. Turner's Will, Moody sent Ms. Turner a letter from the Office of Assistant General Counsel ("February 20 Letter"). *See* February 20 Letter, attached as Exhibit 8.

79.

The February 20 Letter was signed by Koh, who is Assistant General Counsel at Moody. *Id.*

80.

Brown, as General Counsel of Moody, supervised, oversaw, and was aware of the work done by Koh, including the February 20 Letter.

81.

By sending the February 20 Letter, Moody and Koh entered into a purported attorney-client and fiduciary relationship with Ms. Turner.

82.

In the February 20 Letter, Moody and Koh provided unauthorized legal advice to Ms. Turner and offered estate planning options from which she could choose.

83.

The February 20 Letter recommended the creation of a revocable living trust with Moody as the Trustee, which they said would "allow Moody to manage the assets in your trust for your benefit."  With respect to distributions to Ms. Turner's friends and family, Defendants recommended either charitable gift annuities or the creation of a charitable remainder trust.

84.

The February 20 Letter is typical of the type of recommendations and legal advice Defendants have given with regard to Georgia testators to whom Moody is marketing its services.  *See Wachovia Bank, N.A. v. Moody Bible Inst. of Chicago, Inc.*, 283 Ga. App. 488 (2007)(Exhibit 7).

85.

In the February 20 Letter, Moody and Koh did not advise Ms. Turner to keep her estate plan as is, nor did they even present that as a viable option.

86.

In the February 20 Letter, Moody and Koh purport to explain the legal significance and benefits of each option presented.

87.

The February 20 Letter fails to disclose that Koh is not licensed to practice law in Georgia.

88.

The February 20 Letter fails to recommend that Ms. Turner should hire a Georgia attorney to review or draft the proposed estate plan options with her.

89.

The February 20 Letter does not contain a disclaimer that neither Moody nor Koh are Ms. Turner's attorney.

90.

The February 20 Letter fails to disclose that Moody, as a foreign entity, is not allowed to serve as a trustee, executor, and/or estate plan fiduciary in Georgia.

91.

The February 20 Letter fails to disclose the benefits to Moody if Ms. Turner adopted the legal advice and the recommended structure including but not limited to serving as a Trustee, Investment Advisor and beneficiary.  The inherent conflict of interest of Moody promoting itself to serve as Trustee and Investment Advisor, preparing estate planning and real estate documents, while also being included in such documents as a beneficiary, was never disclosed in the February 20 Letter.

92.

Because the conflict of interest was not disclosed, neither Moody nor Koh sought a conflict waiver from Ms. Turner.  No conflict waiver was given, nor could one be given.  *See* Rule 1.8(c).

93.

Any Georgia attorney who took these actions would be violating the Rules of Professional Conduct.  *See* Rule 1.8(c).

94.

The February 20 Letter fails to disclose the option of selecting another, independent trustee, executor, or investment advisor instead of Moody.

95.

The February 20 Letter is silent as to Moody's compensation as Trustee and the fees to be paid to Moody's investment department for its role as Investment Advisor.

96.

The February 20 Letter fails to disclose the impact of the proposed changes on the existing beneficiaries.

97.

Furthermore, the February 20 Letter makes no reference as to which state's law would apply to the estate planning documents.

98.

The February 20 Letter is likewise silent as to Moody's role and compensation and fees to be paid to Moody in managing the numerous testamentary charitable gift annuities that Moody recommended.

99.

The omissions from the February 20 Letter are material.

100.

The February 20 Letter fails to disclose how to deal with the leases on the rental property Ms. Turner owned which Defendants recommended transferring to

the revocable living trust and which were actually conveyed into the revocable living trust.

101.

The February 20 Letter contains many other materially false or misleading statements, including, but not limited to:

- "A Moody Managed Revocable Trust Agreement is a type of trust agreement where the Moody Bible Institute serves as trustee." This implies that Moody is a trust company or has trust powers, and the nomenclature implies that the recommendation is for a Moody Managed Trust as opposed to a conventional revocable living trust which can have anyone or other entities as the trustee.

- "Under this agreement, you would transfer your assets to the Moody Bible Institute to be managed by the Investment Department." This is misleading and false. A conventional revocable living trust allows the grantor to maintain control and ownership of their assets inside of the Trust as the primary trustee while they are alive and competent. Upon incapacity or death, the successor Trustee of the revocable living trust administers the assets pursuant to the terms of the trust.

102.

As fiduciaries, Moody and Koh had a duty to disclose all of this information

to Ms. Turner.

103.

Ms. Turner relied upon Defendants' misrepresentations and omissions.

104.

Any Georgia attorney who took these actions would be violating the Georgia

Rules of Professional Conduct.  *See* Rule 1.8(c).

105.

Any Illinois attorney who took these actions would be violating the Illinois

Rules of Professional Conduct.  *See* Rule 1.8(c).

### *Defendants Engaged In The Unauthorized Practice Of Law By Advising Ms. Turner*

106.

By providing legal advice to Ms. Turner, Defendants, acting in concert,

engaged in the unauthorized practice of law in Georgia.

107.

Defendants' acts of providing unauthorized legal advice to Ms. Turner while

recommending that Moody and its general counsel serve as her fiduciary

constituted a clear conflict of interest that violates the Georgia Rules of

Professional Conduct.  *See* Georgia Rules of Professional Conduct 1.7, 1.8, 5.5, and 5.7.

### *Defendants Change Ms. Turner's Estate Documents To Their Benefit*

108.

After February 20, 2013, Defendants, acting in concert, drafted a Will (the "Turner Moody Will"), attached hereto as Exhibit 9,  and revocable living trust (the "Turner Moody Trust"), attached hereto as Exhibit 10,  which purport to revoke Ms. Turner's Will and materially change Ms. Turner's estate plan.

109.

Defendants drafted the Turner Moody Will and Turner Moody Trust in Chicago, Illinois and delivered, through or by using U.S. Mail or email, these new documents to Ms. Turner in Georgia for signing.

110.

The Turner Moody Trust increases the portion of Ms. Turner's estate that would go to Moody as a beneficiary by direct bequests and through fiduciary compensation.

111.

The Turner Moody Trust also unlawfully names Moody as successor Trustee of such trust after Ms. Turner's death or incapacity whereby Moody earns fiduciary compensation.  (Exhibit 10).

112.

The Turner Moody Trust names Brown, the former General Counsel for Moody, as alternative successor trustee of the Turner Moody Trust.  If Brown is unable to serve, the Turner Moody Trust names whoever is serving as General Counsel of Moody as alternative successor trustee.  (Exhibit10).

113.

Ms. Turner has never met Brown and does not know her.

114.

In addition, as the named successor Trustee under the Turner Moody Trust, Moody, Brown, and Moody's General Counsel each have the right to deplete the trust assets to defend themselves and fight any attempt to revoke and/or amend the Turner Moody Trust by an agent or fiduciary after Ms. Turner's incapacity while they are serving as a fiduciary of the Turner Moody Trust.

115.

With the inclusion of these provisions in the Turner Moody Trust,

Defendants have deceitfully acted in concert to insulate Moody or its agents from

bearing any financial liability or from being removed from office and having the

trust instrument terminated if their scheme is ever uncovered.

116.

Moody's General Counsel and former General Counsel have filed

"Declinations" in the Probate Court of DeKalb County, purporting to decline

serving as Trustee for the Moody Turner Trust.

117.

Such "Declinations" were not proper under Georgia law, and thus, Higdon,

as Conservator, now must seek permission from the Probate Court to appoint a

successor trustee with Ms. Turner bearing the financial cost of such action.

118.

If Defendants or the Turner Moody Trust are challenged, Defendants have

conspired to ensure that they are able to deplete the Turner Moody Trust defending

themselves.  Moody wants to discourage and impede any person, agent or fiduciary

of Ms. Turner—after Ms. Turner's incapacity—from amending or revoking the

Turner Moody Trust.  The Defendants have conspired to ensure that their fees, compensation, and beneficial interest cannot be challenged.

119.

Brown is named as the Executor in the Turner Moody Will. (Exhibit 9).

120.

The Turner Moody Will also provides that if Brown is unable or unwilling to serve, the then-current General Counsel of Moody would be the alternate Executor of the Turner Moody Will.  (Exhibit 9).

121.

Defendants did not inform Ms. Turner that she should hire a Georgia attorney to review or to draft the Turner Moody Trust or the Turner Moody Will.

122.

Defendants never informed Ms. Turner that none of them was acting as her attorney.

123.

Defendants failed to disclose the inherent conflict of interest of Moody promoting itself to serve as Trustee, Executor, and Investment Advisor while also being included as a beneficiary.

124.

Defendants, as fiduciaries, had a duty to disclose these things to Ms. Turner.

125.

Defendants did not seek a conflict waiver from Ms. Turner, and no conflict waiver was given.

126.

Regardless, a conflict waiver in this instance would not be enforceable.

127.

Any Georgia attorney who took these actions would be violating the Georgia Rules of Professional Conduct. *See* Rule 1.8(c).

128.

Any Illinois attorney who took these actions would be violating the Illinois Rules of Professional Conduct. *See* Rule 1.8(c).

129.

Defendants, acting in concert, also drafted real estate deeds to be signed by Ms. Turner and filed with the Clerk of the Superior Court of DeKalb County, Georgia.

130.

Those real estate deeds were drafted in Chicago, Illinois and delivered to Ms. Turner in Georgia through or by use of U.S. Mail or email.

131.

"[O]nly a licensed Georgia attorney may prepare or facilitate the execution of a deed of conveyance." *In re UPL Advisory Opinion 2003-2*, 277 Ga. 472, 472 (2003), attached hereto as Exhibit 11.

132.

On or about August 9, 2013, Ms. Turner executed the Turner Moody Trust and the real estate deeds, prepared and delivered by Defendants, using U.S. Mail or email.

133.

No attorney was present at the execution of the Turner Moody Trust and the real estate deeds to ascertain whether Ms. Turner had sufficient capacity to execute said documents or to advise Ms. Turner as to their compliance with Georgia law.

134.

Defendants, acting in concert, then filed the real estate deeds and paid the filing fees for recording in DeKalb County.  *See* Exhibit 12, attached hereto. (August 28, 2013 Letter to Ms. Turner from Rocky Payne).

135.

The real estate deeds falsely state that Ms. Turner, who has no legal training, owns no computer, printer, or typewriter, and suffers from diminishing and questionable capacity, prepared them.  *See* Real Estate Deeds, attached as Exhibit 13.

136.

On or about August 13, 2013, Ms. Turner executed the Turner Moody Will, which was prepared and delivered by Defendants, using U.S. Mail or email.

137.

No attorney was present at the execution of the Turner Moody Will to ascertain whether Ms. Turner had sufficient capacity to execute said document or to advise Ms. Turner as to their compliance with Georgia law.

138.

Through their unlawful actions, Defendants reduced the overall size of Ms. Turner's estate passing to intended, named beneficiaries and increased the amount of the estate going to Moody.

139.

Defendants have enriched themselves, either through fees, fiduciary compensation, salaries, or as a beneficiary, at the expense of Ms. Turner and Ms. Turner's beneficiaries (prior and current).

140.

Ms. Turner has been adjudicated incapacitated and found to be legally unable to revoke or change a revocable trust and unable to made or modify a contract. *See* Amended Final Order Dated June 11, 2015, a true and correct copy of which is attached hereto as Exhibit 14.

141.

Under Georgia's guardianship/conservatorship code, a finding of need for a guardian and conservator only removes certain specified rights and powers of the ward. Testamentary capacity is not one of such enumerated rights/powers that are automatically removed once a ward is declared incapacitated.

142.

However, Ms. Turner lacks testamentary capacity.

143.

Ms. Turner has been adjudicated incapacitated and found to be legally
unable to revoke or change the Turner Moody Trust.  *See* Amended Final Order
(Exhibit 14).

144.

Defendants have also solicited donations from Ms. Turner and others in
Georgia for decades.

145.

Defendants' actions have caused Ms. Turner and others damage.

### *Moody and its Representatives Have Committed The Same Or Similar Misdeeds In Georgia And Elsewhere Before*

146.

A Georgia resident named Ruth H. Ferris became aware of Moody through
its advertisements on a religious radio program.

147.

After Ms. Ferris expressed an interest in contributing to Moody, Moody sent
a local field representative to Ms. Ferris's home to discuss possible charitable gift
options.

148.

On or about April 4, 1997, pursuant to the unauthorized legal advice of Moody and its representatives, Ms. Ferris executed two irrevocable charitable remainder unitrusts.  Moody served as trustee of both.

149.

Moody and its representatives drafted both unitrusts in Chicago, Illinois and delivered the unitrusts to Ms. Ferris in Georgia through or by use of U.S. Mail.

150.

Both unitrusts provided for income to Ms. Ferris and her sons, with the remainder principal and accumulated and undistributed income to go to Moody.

151.

Pursuant to Moody's unauthorized legal advice, Ms. Ferris executed a Last Will and Testament, dated September 1, 1999 (the "1999 Moody Will"), a copy of which is attached hereto as Exhibit 15.

152.

Moody and its representatives drafted the 1999 Moody Will in Chicago, Illinois and delivered it to Ms. Ferris in Georgia through or by use of U.S. Mail.

153.

The 1999 Moody Will revoked Ms. Ferris's will dated October 8, 1993, under which she had divided her property principally among her two sons with additional gifts to be given to various charities (the "1993 Ferris Will").

154.

In the 1993 Ferris Will, Moody received the lowest percentage of all of Ms. Ferris's charitable bequests.

155.

In contrast, under the 1999 Moody Will, Ms. Ferris omitted one son and largely omitted the other, calling for the majority of her estate to pass to a Moody trust, which provided for the remainder interest to go to only one party—Moody.

156.

In or about August 1999, again pursuant to the unauthorized legal advice of Moody, Ms. Ferris established a revocable trust, a copy of which is attached hereto as Exhibit 16.

157.

Moody and its representatives drafted the revocable trust in Chicago, Illinois and delivered it to Ms. Ferris in Georgia through or by use of U.S. Mail.

158.

Moody named itself trustee of the revocable trust and agreed to pay Ms. Ferris for her life the income that was generated by the assets transferred to the trust.

159.

By its terms, the revocable trust was to terminate upon Ms. Ferris's death. The trust assets would then be divided and transferred equally into two separate irrevocable trusts, one each for Ms. Ferris's two sons.

160.

Ms. Ferris's sons were to receive the income for life from their trusts, with the assets of the trusts being transferred to Moody outright upon their death.

161.

Thus, Moody recommended and drafted the revocable trust for Ms. Ferris in which Moody was both the trustee and the ultimate beneficiary.

162.

Any Georgia attorney who took these actions would be violating the Georgia Rules of Professional Conduct.  *See* Rule 1.8(c).

163.

Any Illinois attorney who took these actions would be violating the Illinois Rules of Professional Conduct.  *See* Rule 1.8(c).

164.

By June 2000, Ms. Ferris realized for the first time that two of the trusts drafted by and created upon the advice and direction of Moody and its representatives were irrevocable and that she did not have control over the assets in those trusts.

165.

Ms. Ferris also realized that the assets in those trusts would not pass outright to her sons upon her death which was contrary to her intention.

166.

Ms. Ferris expressed concern to Moody about being misled by Moody and its representatives.  In response, Moody threatened that she would have to take Moody to court if she wanted to try to reverse the two irrevocable trusts.

167.

On or about June 15, 2000, Ms. Ferris sent a letter to Moody requesting cancellation of the revocable trust and for Moody to mail her a check of all trust proceeds.  *See* Letter dated June 15, 2000, attached hereto as Exhibit 17.

168.

Moody refused to follow Ms. Ferris's directive and did not send the trust assets back to Ms. Ferris.

169.

On August 7, 2000, Ms. Ferris again contacted Moody via telephone and communicated her desire to revoke the revocable trust.

170.

While on the telephone call, Moody again failed and refused to follow Ms. Ferris's directive, stating that this was the "wrong decision" because it was not good stewardship to hold such a large sum of money in a checking account and because Ms. Ferris would be creating probate and tax problems for her estate. *See* Moody Notes, attached hereto as Exhibit 18.

171.

Moody's representations to Ms. Ferris over the telephone were false and constituted the unauthorized practice of law.

172.

Moody made those misrepresentations with the fraudulent intent of preventing Ms. Ferris from revoking the revocable trust.

173.

On or about January 17, 2001, Moody Senior Investment Administrator Carolyn Johnson sent a letter via U.S. Mail to Ms. Ferris stating that Ms. Johnson spoke with Defendant Elizabeth Brown about Ms. Ferris's request to terminate her revocable trust and have Moody return the assets to her (the "January 17, 2001 Moody Letter").  *See* January 17, 2001 Moody Letter attached hereto as Exhibit 19; *see also* Affidavit of Carolyn Johnson, ¶ 7, attached hereto as Exhibit 20.

174.

The January 17, 2001 Moody Letter contained statements and representations that constitute unauthorized legal advice and were contrary to Georgia law.

175.

Among other things, the January 17, 2001 Moody Letter stated that "Brown said that for us to transfer the assets back to you, you need to have either a Last Will and Testament or a Trust Agreement in affect[*sic*]."  (Exhibit 19).

176.

The Georgia Court of Appeals found that the January 17, 2001 Moody Letter contained "factual misrepresentations, telling Ms. Ferris that she had to satisfy

certain conditions before Moody could transfer the Trust assets back to her." *See*

*Moody Bible Inst.*, 283 Ga. App. at 491 (Exhibit 7).

177.

In the years since creating the two unitrusts, Ferris repeatedly indicated her

belief that Moody misled her into creating several irrevocable trusts contrary to her

estate planning wishes.

178.

Eventually, Ms. Ferris executed a new will and a second revocation of the

revocable trust on October 19, 2001, attached hereto as Exhibit 21.

179.

On November 9, 2001 the second revocation notice was sent to Moody via

overnight delivery.

180.

Ms. Ferris died unexpectedly the next day, and Moody received the second

revocation on November 12, 2001.

181.

In response, Moody, through Brown, sent a letter via U.S. Mail on

November 14, 2001 refusing to honor the second revocation.  *See* Letter dated

November 14, 2001, attached hereto as Exhibit 22.

182.

The Georgia Court of Appeals found that Moody "had both a legal and fiduciary obligation" to the trust grantor, but instead of meeting those obligations, Moody "attempted fraud" on the trust grantor. *See Moody Bible Inst.*, 283 Ga. App. at 491 (Exhibit 7).

183.

The Georgia Court of Appeals further found that Moody committed "wrongful conduct." *See Moody Bible Inst.*, 283 Ga. App. at 491 (Exhibit 7).

184.

In addition to their unlawful conduct and unauthorized practice of law in the State of Georgia, Moody and its representatives have similarly acted in other states.

185.

Moody has admitted in court documents that trust documents executed in Florida by a Florida resident were "suggested forms … that were prepared … by in-house counsel employed by the Moody Bible Institute." *See* [Complaint & Answer], ¶ 8, attached hereto as Exhibits 23 & 24, respectively.

## CLASS ALLEGATIONS

### 186.

Plaintiff brings this action on behalf of herself and all others similarly situated.  She proposes to represent a class of all persons who are dead or incapacitated Georgia testators/trust grantors that have had their estate plans altered to place Defendants in the role of Investment Advisor, Trustee, Executor, or Beneficiary or other position that would generate fees or transfers of value to Defendants.

### 187.

This class action satisfies the prerequisites for maintaining a class action under Fed. R. Civ. P. 23.

### 188.

Plaintiff reserves the right to amend the foregoing class definition before the Court determines whether class certification is appropriate.

### 189.

The class is so numerous that joinder of all class members is impracticable. Although Plaintiff is unable to allege the exact number of class members, she believes based on public information that there are hundreds or perhaps thousands

of class members.  Plaintiff believes that records maintained in the ordinary course of Defendants' business will readily reveal the exact number of class members.

190.

This action presents material questions of law and fact common to the class. These questions include, but are not limited to:

(a)    Whether Defendants unlawfully solicited charitable contributions from Georgia residents;

(b)    Whether Defendants properly registered with the Secretary of State to solicit charitable contributions from Georgia residents;

(c)    Whether Defendants have falsely represented their capacity to serve as trustees, executors, and/or estate plan fiduciaries in Georgia;

(d)    Whether Defendants are barred from serving as trustees, executors, or other estate plan fiduciaries in Georgia;

(e)    Whether Defendants advertised, marketed, or otherwise represented their ability to serve as trustees, executors, or other estate plan fiduciaries in Georgia;

(f)    Whether Defendants advertised, marketed, or otherwise represented their ability to perform estate planning and legal services to Georgia residents;

(g)     Whether Defendants drafted legal documents for use in Georgia;

(h)     Whether Defendants requested that Georgia residents send their wills, trusts, and estate instruments ("Documentation") to Defendants;

(i)     Whether such legal documents were delivered to persons residing in Georgia;

(j)     Whether Defendants encouraged persons residing in Georgia to adopt and execute such Documentation without disclosing the benefits to Defendants of executing such Documentation;

(k)     Whether Defendants encouraged, in writing, persons residing in Georgia to seek independent counsel to review such Documentation;

(l)     Whether Defendants recommended changes in such Documentation that would result in the appointment of Defendants in a role which authorized them to receive fees or other transfer of value;

(m)    Whether Defendants' Documentation was executed by persons residing in Georgia;

(n)     Whether Defendants' actions violate the Georgia Fair Business Practices Act;

(o)     Whether Defendants' actions violate the Georgia RICO Act;

(p)     Whether Defendants' actions violate the federal RICO Act;

(q)     Whether Defendants' actions constitute negligence and/or negligence per se;

(r)     Whether Defendants' actions constituted the unauthorized practice of law; and

(s)     Whether Defendants' actions in appointing themselves to roles which authorized them to receive fees or other transfers of value violate Georgia law.

191.

Whether Plaintiff and the class she represents are entitled to an injunction prohibiting Defendants from:

(a)     soliciting charitable contributions from Georgia residents;

(b)     soliciting access to Georgia residents' estate plans;

(b)     recommending estate plans for Georgia residents;

(c)     drafting estate plans including but not limited to wills, trusts, power of attorney, and other estate instruments in Georgia or for Georgia residents;

(d)     failing to disclose fully the benefits to themselves of assuming roles in estate plans of Georgia residents which authorizes them to receive fees or transfers of value;

(e)     banning Defendants from providing legal advice to Georgia residents; and

(f)     banning Defendants from serving as trustees, executors, or other estate plan fiduciaries for Georgia residents.

192.

Plaintiff's claims are typical of the class's claims because all claims (a) present the same elements and burden of proof; (b) rely upon Defendants' same conduct; (c) rely upon the same legal arguments; (d) rely upon the same method to measure damages; and (e) seek the same injunctive relief to protect against future violations.

193.

Plaintiff is an adequate representative of the class.  Plaintiff has suffered or will imminently suffer injuries typical of those suffered by other class members, is committed to obtaining just relief for all class members, and will fairly and adequately protect the interests of the class.

194.

Plaintiff has retained lawyers that are qualified, experienced, and able to represent Plaintiff and the class.

195.

The questions of law and fact common to the class members predominate over any questions affecting only individual class members.

196.

A class action is a superior method of adjudicating the class members' claims because individual actions would unnecessarily burden the Court and create risk of inconsistent results.

197.

The interests of individual class members are overwhelmingly best served by the conduct of a class action.  Class members' individual claims do not justify the investment of time and money that will need to be made in the litigation; absent a class vehicle for presenting such claims, the individual class members would not, in all reasonable probability, be able to prosecute and win their claims.

198.

This action is manageable because the evidence proving the legal wrongs alleged are common to the class, and the class members' identities can be manageably ascertained through documents in Defendants' possession.

199.

Plaintiff seeks certification of a class under Fed. R. Civ. P. 23.

200.

Because Defendants have acted and refused to act on grounds that apply generally to the class, injunctive relief that: (1) prohibits Defendants from soliciting charitable donations in Georgia; (2) from serving as trustees, executors, or other estate plan fiduciaries in Georgia; (3) from continuing to improperly advertise and perform legal services in Georgia without a Georgia bar license; and (4) declares that the legal services improperly provided by Defendants in Georgia are void and unenforceable is appropriate on a class-wide basis.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF GEORGIA CHARITABLE SOLICITATIONS ACT OF 1988
### (All Defendants)

201.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 of the Class Action Complaint as though fully set forth herein.

202.

Any person entitled to bring an action under the Georgia Charitable Solicitations Act of 1988 may institute a class action for the recovery of damages. *See* O.C.G.A. § 43-17-14.

203.

It is unlawful for a person to solicit or accept charitable contributions from any person located in Georgia unless the charitable organization on whose behalf those contributions are being solicited or accepted has filed an effective registration statement under the Georgia Charitable Solicitations Act of 1988 or is exempt from such registration.  *See* O.C.G.A. § 43-17-5(a).

204.

Unless it is exempt from registration, a charitable organization must, prior to any solicitation, file a registration statement with the Secretary of State.  *See* O.C.G.A. § 43-17-5(b).

205.

Moody failed to file the required registration statement with the Secretary of State prior to soliciting donations in the State of Georgia.

206.

Moody is not exempt from filing the required registration statement with the Secretary of State.

207.

Moody does not fall within the definition of "educational institution" as it is used in the Georgia Charitable Solicitations Act of 1988.  *See* O.C.G.A. § 43-17-2.

208.

An "educational institution" is defined, in part, as "an entity organized and operated *exclusively* for educational purposes…." *See* O.C.G.A. § 43-17-2 (emphasis added).

209.

Moody is not organized and operated *exclusively* for educational purposes.

210.

In prior sworn statements, Moody and its representatives have expressly testified that Moody operates several significant non-educational businesses.

211.

In its 2012 Form 990, Moody states it "is a higher education *and* media ministry…." (Exhibit 1)(signed by Brown under penalty of perjury that "return, including accompanying schedules and statements … are true, correct, and complete.")(emphasis added).

212.

Moody's 2012 Form 990 differentiates its "education branch" from its "[o]ther primary ministries includ[ing] Moody Radio and Moody Publishers." (Exhibit 1).

213.

Moody's 2012 Form 990 further differentiates its different operations by clearly and explicitly dividing them into different sections:  Education, Publishing, Broadcasting, and Other Programs.  (Exhibit 1).

214.

Moody's 2012 Form 990 shows that its revenue from sales of literature was higher than its revenue for tuition and student fees.  (Exhibit 1 at p. 9).

215.

In an affidavit signed on or about November 18, 2005, Brown testified about Moody's vast and various non-educational operations.  *See* Affidavit of Elizabeth A.S. Brown, attached hereto as Exhibit 25.

216.

Specifically, Brown testified that "Moody also owns and operates radio stations throughout the United States…[,] owns the Moody Broadcasting Network…[, and] carries on a publishing ministry through its Moody Publishers division."  Brown Aff., ¶ 3.

217.

Moody's radio broadcast business is further evidenced by a zoning dispute that arose in Tennessee. *See Crockett v. Rutherford County*, 2002 WL 1677725 (Tenn. App. July 25, 2002), attached hereto as Exhibit 26.

218.

Moody's brochure entitled "Legacy to the World" touts that Moody serves as trustee in hundreds of revocable living trusts, which clearly is not an educational purpose.

219.

No paid solicitor or solicitor agent may solicit contributions for a charitable purpose in or from this state or on behalf of a charitable organization, unless the paid solicitor or solicitor agent has properly registered with the Secretary of State. *See* O.C.G.A. §§ 43-17-3 & 43-17-3.1.

220.

Rocky Payne is either a paid solicitor or solicitor agent for Moody.

221.

Rocky Payne has not registered with the Secretary of State.

222.

No person shall, in connection with the planning, conduct, or execution of any charitable solicitation, directly or indirectly make an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  *See* Ga. Reg. 590-9-5-.01.

223.

In addition to and in connection with their solicitations in Georgia, Defendants have: (1) falsely represented that they may serve as trustees, executors, and/or estate plan fiduciaries in Georgia; (2) have falsely represented goods and services of a particular standard, quality, and grade to the consumer public, when they have provided goods and services of a much lower standard, quality, and grade; (3) have falsely advertised goods and services to the consumer public with the intent not to sell them as advertised; and (4) failed to disclose the material benefit they gain from the changes made to the testators or grantors' estate plans and the material detriment suffered by the testator/grantor and/or current beneficiaries, trustees, executors, and investment advisors.

224.

Plaintiff and others similarly situated have been harmed by the actions of Defendants constituting violations of the Georgia Charitable Solicitations Act of 1988.

225.

Any person who suffers injury or damages as a result of acts or practices in violation of the Georgia Charitable Solicitations Act of 1988 may bring an action and may recover general damages, exemplary damages, and attorneys' fees. *See* O.C.G.A. § 43-17-14.

226.

The Statute of Limitations for any action brought under the Georgia Charitable Solicitations Act of 1988 is twenty (20) years. *See* O.C.G.A. § 9-3-22.

## COUNT II – VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT
### (All Defendants)

227.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 of the Class Action Complaint as though fully set forth herein.

228.

Defendants, acting in concert, have engaged in unfair and deceptive acts and practices in trade and commerce which adversely affect the consumer public.

229.

Defendants have falsely represented that they may serve as trustees, executors, and/or estate plan fiduciaries in Georgia.

230.

Defendants have falsely represented that they may perform legal services in Georgia.

231.

Defendants have represented goods and services of a particular standard, quality, and grade to the consumer public, but they have provided goods and services of a much lower standard, quality, and grade.

232.

Defendants have advertised goods and services to the consumer public with the intent not to sell them as advertised.

233.

Because Defendants have violated the Georgia Charitable Solicitations Act of 1988, they have violated the Georgia Fair Business Practices Act. *See* O.C.G.A.

§ 43-17-19 ("solicitation shall be deemed to be a consumer act or practice or consumer transaction under … the 'Fair Business Practices Act of 1975.'").

234.

Ms. Turner justifiably relied on Defendants' misrepresentations.

235.

Pursuant to O.C.G.A. § 10-1-405, individual directors, officers, employees, and representatives are also deemed to violate the Georgia Fair Business Practices Act if they had actual knowledge and directly authorized, supervised, ordered, or did any of the acts constituting in whole or part the violation.

236.

The individual defendants had actual knowledge and directly authorized, supervised, ordered, and/or performed the acts constituting in whole or part the violations by Moody.

237.

Moody, Brown, and Koh do not maintain a place of business in the State of Georgia.

238.

Moody, Brown, and Koh do not keep assets in the State of Georgia.

239.

The pre-suit notice requirement does not apply to Moody, Brown, and Koh. *See* O.C.G.A. § 10-1-399(d).

240.

The conduct of Defendants has caused Plaintiff and others similarly situated to be damaged.

241.

Defendants are liable for treble damages pursuant to O.C.G.A. § 10-1-399(c).

242.

Defendants are also liable for reasonable attorneys' fees and litigation expenses pursuant to O.C.G.A. § 10-1-399(d).

## COUNT III – VIOLATION OF THE GEORGIA RICO ACT § 16-14-4 *ET SEQ*.
### (All Defendants)

243.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 of the Class Action Complaint as though fully set forth herein.

244.

Defendants have engaged in a pattern of racketeering activity as defined by O.C.G.A. § 16-4-3(8).

245.

Under Georgia law, it is unlawful for any person through a pattern of racketeering activity, or proceeds derived therefrom, to acquire or maintain, to endeavor to acquire or maintain, or to conspire to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real or personal property, including money.  O.C.G.A. § 16-14-4(a).

246.

It is also unlawful under Georgia law for any person employed by or associated with any enterprise to conduct or participate in, to endeavor to conduct or participate in, or to conspire to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.  O.C.G.A. § 16-14-4(b).

247.

It is also unlawful under Georgia law for any person to conspire or endeavor to violate any of the provisions of O.C.G.A. § 16-14-4(a) or O.C.G.A. § 16-14-4(b).  *See* O.C.G.A. § 16-14-4(c).

248.

The pattern of racketeering activity, spanning at least 15 years and affecting numerous victims in Georgia, can be described as follows:  Defendants market, promote, and advertise estate planning and legal services in Georgia through the use of the internet, mail, in person seminars, in person meetings with Georgia residents, personal contact through Stewardship Representatives, and other means. Defendants fraudulently represent that they are capable and allowed to assist in making changes to estate plans and real estate titles of Georgia testators. Defendants fraudulently represent that they are legally allowed to serve as trustees, executors, and/or estate plan fiduciaries in Georgia.  Defendants fail to disclose the material benefit they gain from the changes made to the testators or grantors' estate plans and the material detriment suffered by the testator/grantor and/or current beneficiaries, trustees, executors, and investment advisors.  Defendants then use the mail and wires to deliver the fraudulently changed estate plans and real estate titles of Georgia testators and trust grantors.  Defendants have committed mail and wire fraud and theft by deception.

249.

Plaintiff and others similarly situated were harmed by the racketeering activity.  Through the implementation of its scheme, Moody and the other

Defendants acquire, or endeavor to acquire an interest in or control over, the real and personal property of Ms. Turner, Plaintiff, and others similarly situated. Defendants' scheme is solely to the benefit themselves to the detriment of Ms. Turner and the existing beneficiaries, trustees, executors, and investment advisors.

250.

Specifically, Defendants have committed the following acts:

- At least since 1997, Defendants have engaged in a pattern of racketeering in the State of Georgia.

- On or about April 4, 1997, pursuant to the unauthorized legal advice and misrepresentations of Moody and its representatives, Ms. Ferris executed two irrevocable charitable remainder unitrusts.  Moody served as trustee of both.  Moody and its representatives drafted both unitrusts in Chicago, Illinois and delivered the unitrusts to Ms. Ferris in Georgia through or by use of U.S. Mail.

- In addition, and again pursuant to Moody's unauthorized legal advice and misrepresentations, Ms. Ferris executed a Last Will and Testament, dated September 1, 1999 (the "1999 Moody Will"), which was drafted by Moody and its representatives.  Moody and its

representatives drafted the 1999 Moody Will in Chicago, Illinois and

delivered it to Ms. Ferris in Georgia through or by use of U.S. Mail.

- In or about August 1999, again pursuant to the unauthorized legal

  advice and misrepresentations of Moody, Ms. Ferris established a

  revocable trust.   Moody and its representatives drafted the revocable

  trust in Chicago, Illinois and delivered it to Ms. Ferris in Georgia

  through or by use of U.S. Mail.

- Moody recommended to, and drafted for, Ms. Ferris the revocable

  trust of which Moody was both the trustee and the ultimate

  beneficiary.

- On or about June 15, 2000, Ms. Ferris sent a letter to Moody revoking

  the revocable trust and requested Moody to mail her a check of all

  trust asset proceeds.  Moody failed and refused to follow Ms. Ferris's

  directive and did not send the trust assets back to Ms. Ferris.

- On August 7, 2000, Ms. Ferris again contacted Moody via telephone

  and communicated her desire to revoke the revocable trust.  During

  the telephone call, Moody again failed and refused to follow Ms.

  Ferris's directive, stating that this was the "wrong decision" because it

  was not good stewardship to hold such a large sum of money in a

checking account and Ms. Ferris would be creating probate and tax problems for her estate.  Moody's representations to Ms. Ferris over the telephone were false and constituted the unauthorized practice of law.  Moody made those misrepresentations with the fraudulent intent of preventing Ms. Ferris from revoking the revocable trust.

- On or about January 17, 2001, Moody Senior Investment Administrator Carolyn Johnson sent a letter via U.S. Mail to Ms. Ferris stating that Ms. Johnson spoke with Brown about Ms. Ferris's request to terminate her revocable trust and have Moody return the assets to her (the "January 17, 2001 Moody Letter").  The January 17, 2001 Moody Letter contained statements and representations that constitute unauthorized legal advice, that were false, and that were contrary to Georgia law.

- Among other things, the January 17, 2001 Moody Letter falsely stated that "Brown said that for us to transfer the assets back to you, you need to have either a Last Will and Testament or a Trust Agreement in affect.[*sic*]"

- On November 9, 2001 Ms. Ferris sent a second revocation notice to Moody via overnight delivery.

- In response, Moody, through Brown, sent a letter via U.S. Mail on November 14, 2001 refusing to honor the second revocation.

- The actions of Moody and its representatives with respect to Ms. Ferris damaged Ms. Ferris's estate beneficiaries.

- Moody has admitted in court documents that it has prepared trust documents executed in Florida in 1997 by a Florida resident.

- Continuously, since at least summer 2014, Moody has falsely advertised over the internet and through brochures to residents of Georgia that it "can help set up a plan for organizing your estate with a will or trust…"

- Continuously, since at least summer 2014, Moody has provided access to a brochure entitled "Legacy to the World," in which Moody promotes naming it as the trustee or successor trustee of revocable living trusts.  The brochure even touts that Moody serves as trustee in hundreds of revocable living trusts.

- Continuously, since at least summer 2014, Moody, via its website, provides a Will Planning Kit to Georgia residents upon request.

- For many years, Moody has improperly advertised its estate planning services to Georgia residents through Moody Radio South.

- A recording of one such broadcast from in or about 2013 could be heard here:

  http://openaudiovideo.moody.edu/OSAM/OSAM/ASX/Audio/wma/Radio/WMFT/2013/RPayneGenerosityStewardship40414.asx

- In early 2013, Payne asked Ms. Turner for a copy of her current Will, and Payne forwarded Ms. Turner's Will, via U.S. Mail or email, to Moody's corporate office in Chicago, Illinois for review and recommendations.

- On or about February 20, 2013, after reviewing Ms. Turner's Will, Moody sent Ms. Turner a letter from the Office of Assistant General Counsel ("February 20 Letter").

- The February 20 Letter was signed by Koh, who is Assistant General Counsel at Moody.

- Koh acted at the direction and under the supervision of Brown.

- In the February 20 Letter, Moody and Koh provided unauthorized legal advice to Ms. Turner and offered estate planning options from which she could choose.

- The February 20 Letter recommended the creation of a revocable living trust with Moody as the Trustee, which Moody said would

"allow Moody to manage the assets in your trust for your benefit."
With respect to distributions to Ms. Turner's friends and family,
Defendants recommended either charitable gift annuities or the
creation of a charitable remainder trust.

- The February 20 Letter fails to disclose that Koh is not licensed to
  practice law in Georgia.

- The February 20 Letter fails to disclose that Moody, as a foreign
  entity, is not allowed to serve as a trustee, executor, and/or estate plan
  fiduciary in Georgia.

- As fiduciaries, Defendants had a duty to disclose this material
  information.

- The February 20 Letter contains many other materially false or
  misleading statements, including, but not limited to:

  o "A Moody Managed Revocable Trust Agreement is a type of
    trust agreement where the Moody Bible Institute serves as
    trustee."  This implies that Moody is a trust company or has
    trust powers, and the nomenclature implies that the
    recommendation is for a Moody Managed Trust as opposed to a

conventional revocable living trust which can have anyone or other entities as the trustee.

- o "Under this agreement, you would transfer your assets to the Moody Bible Institute to be managed by the Investment Department." This is misleading and false. A conventional revocable living trust allows the grantor to maintain control and ownership of their assets inside of the Trust as the primary trustee while they are alive and competent. Upon incapacity or death, the successor Trustee of the revocable living trust administers the assets pursuant to the terms of the trust.

- Ms. Turner relied on Defendants' misrepresentations and omissions.

- After February 20, 2013, Defendants, acting in concert, drafted the Turner Moody Will and the Turner Moody Trust, which purport to revoke Ms. Turner's Will and materially change Ms. Turner's estate plan.

- Defendants drafted the Turner Moody Will and Turner Moody Trust in Chicago, Illinois and delivered, through or by using U.S. Mail or email, these new documents to Ms. Turner in Georgia for signing.

- The Turner Moody Trust also unlawfully names Moody as successor Trustee of such trust after Ms. Turner's death or incapacity whereby Moody earns fiduciary compensation.

- Defendants, acting in concert, also drafted real estate deeds in Chicago, Illinois to be signed by Ms. Turner and filed with the Clerk of the Superior Court of DeKalb County, Georgia.   Those real estate deeds were delivered to Ms. Turner in Georgia through or by use of U.S. Mail or email.

- In or about August 2013, Defendants, acting in concert, filed the real estate deeds and paid the filing fees for recording in DeKalb County. The real estate deeds falsely state that Ms. Turner, who has no legal training, owns no computer, printer, or typewriter, and suffers from diminishing and questionable capacity, prepared them.

251.

Defendants specifically target elderly Georgia residents like Ms. Turner and others similarly situated to induce them to rely on Defendants' material representations and omissions in connection with creating new estate plans which solely benefit Defendants and harm Plaintiff and other similarly situated.

252.

Defendants constitute an association-in-fact enterprise within the meaning of O.C.G.A. § 16-14-3(6).

253.

Defendants have knowingly and willfully violated the provisions of O.C.G.A. § 16-14-4(a), that is, to conspire to acquire or maintain, directly or indirectly, an interest in Ms. Turner's Estate and others similarly situated.

254.

Defendants have knowingly and willfully combined and conspired with and among one another to violate the provisions of O.C.G.A. § 16-14-4(b), that is, to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

255.

Defendants have engaged in a coordinated pattern of activity to deprive Plaintiff and others similarly situated of their property, and those activities which constitute Racketeering Activity as defined by O.C.G.A. § 16-14-3(9)(A) include, but are not limited to:

- Theft by deception in violation of O.C.G.A. § 16-8-3.  Defendants committed theft by deception through the fraudulent and deceptive

changes to the estate plans of Georgia testators and trust grantors to their detriment.  Theft by deception is a predicate act under O.C.G.A. § 16-14-3(9)(A)(ix).

- Mail fraud in violation of 18 U.S.C. § 1341.  Through the use of a mail service, Defendants have participated directly or indirectly in a scheme to commit theft by deception and civil fraud against Plaintiff and others similarly situated.  Specifically, Defendants submitted or caused to be submitted unlawful legal recommendations and revised estate planning documents and real estate deeds in Georgia. Defendants fraudulently represent that they are legally allowed to serve as trustees, executors, and/or estate plan fiduciaries in Georgia. Defendants also fraudulently represent that they are legally allowed to solicit charitable contributions in Georgia. These separate and repeated acts of mail fraud under 18 U.S.C. § 1341 are predicate acts under O.C.G.A. § 16-14-3(9)(B).

- Wire fraud in violation of 18 U.S.C. § 1343.  Through the use of United States wires, Defendants have participated directly or indirectly in a scheme to commit theft by deception and civil fraud against Georgia testators/trust grantors and beneficiaries.

Specifically, Defendants have distributed by radio, electronic mail, and internet estate planning advice and recommendations with the present intent and knowledge that Defendants are not licensed or allowed to give such advice or recommendations in Georgia. Defendants fraudulently represent that they are legally allowed to serve as trustees, executors, and/or estate plan fiduciaries in Georgia. Defendants also fraudulently represent that they are legally allowed to solicit charitable contributions in Georgia. These separate and repeated acts of wire fraud under 18 U.S.C. § 1343 are predicate acts under O.C.G.A. § 16-14-3(9)(B).

256.

At all times relevant hereto, Defendants were associated with the above-described enterprises and knowingly, willfully and intentionally participated, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of criminal activity in violation of O.C.G.A. § 16-14-4(b).

257.

These incidents of criminal activity were not isolated incidents, but were separate and interrelated acts forming a systematic and ongoing pattern, which Defendants concealed from Plaintiff.

258.

Plaintiff and others similarly situated have been damaged by Defendants' commission of predicate acts in violation of O.C.G.A. § 16-14-4, for which Defendants are jointly and severally liable, in an amount to be determined at the trial of this action, for all damages as allowed by law.

259.

Pursuant to O.C.G.A. § 16-14-6(a), Plaintiff and others similarly situated are entitled to an order of this Court:

(a)     Requiring Defendants to divest themselves of any interest in the assets and property acquired through their pattern of racketeering activity;

(b)     Imposing reasonable restrictions upon the future activities of Defendants including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise in which they were engaged in violation of O.C.G.A. § 16-14-4.

260.

Additionally, pursuant to O.C.G.A. § 16-14-6(c), Plaintiff is entitled to three times her actual damages, punitive damages and costs of investigation and litigation including attorneys' fees from Defendants for their willful, wrongful and malicious conduct.

## COUNT IV – VIOLATION OF THE FEDERAL RICO ACT 18 U.S.C. § 1961 *ET SEQ.*
### (All Defendants)

261.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185, 247 through 250, and 255 of the Class Action Complaint as though fully set forth herein.

262.

Defendants have engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5).

263.

It is unlawful for any person to receive any income derived, directly or indirectly, from a pattern of racketeering activity, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  18 U.S.C. § 1962(a).

264.

It is also unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any

enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  18 U.S.C. § 1962(b).

265.

It is also unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(c).

266.

It is also unlawful under Georgia law for any person to conspire or endeavor to violate any of the provisions of 18 U.S.C. § 1962 (a), (b), or (c).  18 U.S.C. § 1962(d).

267.

The pattern of racketeering activity described above in Paragraphs 263 through 265, spans at least 15 years and affects numerous victims throughout the United States.

268.

Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

269.

Defendants have knowingly and willfully violated the provisions of 18

U.S.C. § 1962(a), that is, to conspire to acquire or maintain, directly or indirectly,

an interest in the estates of Plaintiff and others similarly situated.

270.

Defendants have knowingly and willfully combined and conspired with and

among one another to violate the provisions of 18 U.S.C. § 1962(b), that is, to

conduct or participate, directly or indirectly, in the conduct of the affairs of the

enterprise through a pattern of racketeering activity.

271.

Defendants have knowingly and willfully combined and conspired with and

among one another to violate the provisions of 18 U.S.C. § 1962(c), that is, to be

employed by or associate with the enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity

272.

Defendants have engaged in a coordinated pattern of activity to deprive

Plaintiff and others similarly situated of their property, and those activities which

constitute Racketeering Activity as defined by 18 U.S.C. § 1961(1) include, but are not limited to:

- Mail fraud in violation of 18 U.S.C. § 1341. The separate and repeated acts of mail fraud alleged herein under 18 U.S.C. § 1341 are predicate acts under 18 U.S.C. § 1961(1).

- Wire fraud in violation of 18 U.S.C. § 1343. The separate and repeated acts of wire fraud alleged herein under 18 U.S.C. § 1343 are predicate acts under 18 U.S.C. § 1961(1).

273.

At all times relevant hereto, Defendants were associated with the above-described enterprises and knowingly, willfully and intentionally participated, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of criminal activity in violation of 18 U.S.C. § 1962(b).

274.

These incidents of criminal activity were not isolated incidents, but were separate and interrelated acts forming a systematic and ongoing pattern, which Defendants concealed from Plaintiff.

275.

Plaintiff and others similarly situated have been damaged by Defendants' commission of predicate acts in violation of 18 U.S.C. § 1962, for which Defendants are jointly and severally liable, in an amount to be determined at the trial of this action, for all damages as allowed by law.

276.

Pursuant to 18 U.S.C. § 1964(a), Plaintiff and others similarly situated are entitled to an order of this Court:

(c)     Requiring Defendants to divest themselves of any interest in the assets and property acquired through their pattern of racketeering activity;

(d)     Imposing reasonable restrictions upon the future activities of Defendants including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise in which they were engaged in violation of 18 U.S.C. § 1962.

277.

Additionally, pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to three times her actual damages and cost of suit, including reasonable attorneys' fees from Defendants for their willful, wrongful and malicious conduct.

## COUNT V – NEGLIGENCE AND NEGLIGENCE PER SE
### (All Defendants)

278.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 of the Class Action Complaint as though fully set forth herein.

279.

O.C.G.A. § 15-19-51 prohibits persons without a license to practice law in the State of Georgia from holding themselves out to the public or otherwise to any person as being entitled to practice law or from rendering or furnishing legal services or advice.

280.

The Georgia code provision "defin[ing] and regulat[ing] the practice of law . . . is intended to protect *the public against exploitation* by incompetent and unqualified practitioners." *Lowe v. Presley*, 86 Ga. App. 328, 332 (1952) (emphasis added).

281.

"The public is also entitled to protection against unauthorized practitioners of law." *Lowe v. Presley*, 86 Ga. App. 328, 332 (1952).

282.

Both Georgia and Illinois recognize a lawyer's responsibilities not only to clients, but also to the legal system.  *See* Ga. Rules of Professional Conduct, Preamble at 8; Ill. Rules of Professional Conduct, Preamble at 9.

283.

"Every lawyer is responsible for observance of the Rules of Professional Conduct."  Ga. Rules of Professional Conduct, Preamble at 11; Ill. Rules of Professional Conduct, Preamble at 12.  "Neglect of these responsibilities compromises the independence of the profession and *the public interest which it serves*."  *Id.* (emphasis added)

284.

A lawyer is an officer of the legal system.  Ga. Rules of Professional Conduct, Preamble at 1; Ill. Rules of Professional Conduct, Preamble at 1.

285.

Both Georgia and Illinois similarly prohibit a lawyer from preparing "an instrument giving the lawyer or a person related to the lawyer as parent, grandparent, child, grandchild, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."  Ga. Rule of Professional Conduct 1.8(c); Ill. Rule of Professional Conduct 1.8(c).

286.

In Georgia, "A lawyer shall neither enter into a business transaction with a client if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, nor shall the lawyer knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

1. the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

2. the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

3. the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction."

Ga. Rule of Professional Conduct 1.8(a). Illinois Bar has adopted a virtually identical rule that applies to lawyers licensed in Illinois. *See* Ill. Rule of Professional Conduct 1.8(a).

287.

Both Georgia and Illinois require a "lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other

lawyer conforms to the Georgia Rules of Professional Conduct." *See* Ga. Rules of Professional Conduct 5.1(b); Ill. Rules of Professional conduct 5.1(b).

288.

A lawyer in both Georgia and Illinois is responsible for another lawyer's violation of the Rules of Professional Conduct if: "(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." *See* Ga. Rules of Professional Conduct 5.1(c); Ill. Rules of Professional conduct 5.1(c).

289.

In both Georgia and Illinois, a lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person. *See* Ga. Rules of Professional Conduct 5.2(a); Ill. Rules of Professional conduct 5.2(a).

290.

Both Georgia and Illinois require a lawyer having direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the

nonlawyer's conduct is compatible with the professional obligations of the lawyer. *See* Ga. Rules of Professional Conduct 5.3(b); Ill. Rules of Professional conduct 5.3(b).

291.

In both Georgia and Illinois, a lawyer is responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.  *See* Ga. Rules of Professional Conduct 5.3(c); Ill. Rules of Professional conduct 5.3(c).

292.

In Georgia, no person shall, in connection with the planning, conduct, or execution of any charitable solicitation, directly or indirectly make an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  *See* Ga. Reg. 590-9-5-.01.

293.

Defendants, acting in concert, have violated O.C.G.A. §§ 15-19-51; the

Georgia and Illinois Rules of Professional Conduct; §§ 53-12-321; and 53-12-2(4).

294.

Defendants' conduct constitutes negligence per se.  *See, e.g., Ledee v.*

*Devoe*, 250 Ga. App. 15, 21 (2001); *Tegman v. Accident & Medical Investigations,*

*Inc.*, 30 P.3d 8, 13 (Wash. App. 2001)("Non-attorneys who attempt to practice law

will be held to the same standards of competence demanded of attorneys and will

be liable for negligence if these standards are not met.").

295.

Plaintiff and others similarly situated fall within the class of persons that

were intended to be protected by the prohibition on a person other than a duly

licensed attorney at law of holding himself out to the public or otherwise to any

person as being entitled to practice law.  *See* O.C.G.A. § 15-19-51.

296.

Plaintiff and others similarly situated fall within the class of persons that

were intended to be protected by the Georgia and Illinois Rules of Professional

Conduct.

297.

Plaintiff and others similarly situated fall within the class of persons that were intended to be protected by the prohibition of certain foreign entities from serving as trustees, executors, and/or estate plan fiduciaries in Georgia. *See* O.C.G.A. §§ 53-12-321; 53-12-2(4).

298.

The harm inflicted on Plaintiff and others similarly situated is of the same harm O.C.G.A. § 15-19-51; the Georgia and Illinois Rules of Professional Conduct; § 53-12-321; and § 53-12-2(4) were intended to guard against.

299.

Defendants' unauthorized practice of law, multiple violations of the Georgia and Illinois Rules of Professional Conduct, and unlawful service as trustee, executor, and/or estate plan fiduciary proximately caused Plaintiff and others similarly situated damage.

300.

Defendants are jointly and severally liable to Plaintiff and others similarly situated in an amount to be determined at trial.

## COUNT VI – CIVIL CONSPIRACY
### (All Defendants)

301.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 and 243 through 277 of the Class Action Complaint as though fully set forth herein.

302.

Defendants acted wrongfully and in concert to perpetrate fraud upon Plaintiff, to commit RICO violations, and to violate the Georgia Fair Business Practices Act.

303.

Defendants' misconduct was intentional, deliberate, malicious, willful, and designed to injure, and shows that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

304.

Defendants' wrongful conduct has proximately caused damages to Plaintiff and others similarly situated in an amount to be proven at trial.

305.

Defendants are also liable for punitive damages in an amount to be determined by the enlightened conscience of an impartial jury.

## COUNT VII – INJUNCTION
### (All Defendants)

306.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 and 243 through 277 of the Class Action Complaint as though fully set forth herein.

307.

Pursuant to O.C.G.A. § 10-1-420, it is unlawful to advertise the sale of services with the intent, design, or purpose not to sell the services as advertised.

308.

Defendants, acting in concert, have falsely advertised the estate planning services they have delivered to residents in Georgia.

309.

Defendants, acting in concert, have unlawfully solicited charitable donations from residents in Georgia.

310.

Pursuant to O.C.G.A. § 10-1-421, it is unlawful to make false or fraudulent statements in connection with the advertising of services, professional or otherwise, in Georgia.

311.

Pursuant to O.C.G.A. § 10-1-423, any person or corporation advertising services for sale in violation of O.C.G.A. § 10-1-420 or § 10-1-421 may be enjoined from such advertising upon the suit of any person aggrieved or about to be aggrieved thereby.

312.

Pursuant to O.C.G.A. § 10-1-427, it is unlawful for a person or corporation to advertise legal services in Georgia in a manner that is untrue, fraudulent, deceptive, or misleading.

313.

Pursuant to O.C.G.A. § 10-1-373, a person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required.

314.

Defendants and their agents and representatives deceptively advertise estate planning and associated legal services to residents of Georgia.

315.

Defendants then engage in the unauthorized practice of law by recommending changes to the estate plans and real estate titles of Georgia residents, drafting estate documents and real estate deeds for use in Georgia by Georgia residents, and drafting other legal documents for use in Georgia by Georgia residents.

316.

Defendants then purport to unlawfully serve as trustees, executors, and/or estate plan fiduciaries in Georgia.

317.

Defendants do not inform those Georgia residents that Defendants are not licensed to practice law in Georgia, that their estate planning recommendations and document drafting are illegal, and that they are not allowed under Georgia law to serve as trustees, executors, and/or estate plan fiduciaries.

318.

Defendants do not inform those Georgia residents that the professional services being delivered are not of the quality being advertised and offered.

319.

Through their improper and unlawful actions, Defendants are harming

Georgia testators and/or trust grantors.

320.

Plaintiff and others similarly situated have suffered and shall suffer

imminent and irreparable harm with no adequate remedy at law.

321.

Plaintiff seeks a permanent injunction pursuant to O.C.G.A. § 9-11-65, § 9-

5-1, § 16-14-6, and 18 U.S.C. § 1964 to stop Defendants or any of their agents or

representatives from deceptively advertising, marketing, promoting, selling, or

performing estate planning and associated legal services to residents of  Georgia or

serving as trustees, executors, and/or estate plan fiduciaries in Georgia.

## COUNT VIII – PUNITIVE DAMAGES
### (All Defendants)

322.

Plaintiff hereby realleges and incorporates herein by reference the averments

contained in Paragraphs 8 through 185 of the Class Action Complaint as though

fully set forth herein.

323.

Defendants' tortious and unlawful acts, as described in this Complaint, have been committed with the specific intent to injure Plaintiff and others similarly situated.

324.

Defendants' misconduct was intentional, deliberate, malicious, willful, and designed to injure, and shows that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

325.

Plaintiff requests, pursuant to O.C.G.A. § 51-12-5.1, that punitive damages be awarded against Defendants in an amount to be determined by the enlightened conscience of an impartial jury.

## COUNT IX – ATTORNEY'S FEES AND LITIGATION COSTS
### (All Defendants)

326.

Plaintiff hereby realleges and incorporates herein by reference the averments contained in Paragraphs 8 through 185 of the Class Action Complaint as though fully set forth herein.

327.

Defendants are liable for reasonable attorneys' fees and litigation expenses pursuant to O.C.G.A. § 10-1-399(d).

328.

Defendants are also liable for costs and reasonable attorneys' fees and litigation expenses pursuant to O.C.G.A. § 10-1-373.

329.

Defendants are liable for expenses of litigation and reasonable attorneys' fees pursuant to O.C.G.A. § 53-12-302(a)(4).

330.

Defendants are liable for attorneys' fees pursuant to O.C.G.A. § 43-17-14.

331.

Moreover, Defendants have acted in bad faith, have been stubbornly litigious and have caused Plaintiff to expend unnecessary time, trouble and expense in bringing this action.

332.

Plaintiff is entitled to her reasonable attorneys' fees from Defendants as a result of their actions.

**WHEREFORE**, Plaintiff prays that this Court enter judgment as follows:

(a)     Enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

(b)     Enter judgment awarding compensatory, punitive, and treble damages to Plaintiff and the class members in an amount to be determined at trial;

(c)     Enter injunctive relief compelling Defendants and/or any of their agents or representatives to cease and desist from deceptively advertising, marketing, promoting, selling, or performing estate planning and associated legal services to residents of  Georgia; compelling Defendants to cease and desist from soliciting charitable donations from residents of Georgia; compelling Defendants to cease and desist from serving as trustees, executors, and/or estate plan fiduciaries in Georgia; requiring Defendants to divest themselves of any interest in the assets and property acquired through their pattern of racketeering activity, and imposing reasonable restrictions upon the future activities or investments of Defendants including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise in which they were engaged in violation of O.C.G.A. § 16-14-4 and 18 U.S.C. § 1962.

(d)     Award Plaintiff and the Class their litigation costs and reasonable

attorneys' fees;

(e)     A trial by jury; and

(f)     For such other and further relief as the Court deems just and proper.

This the 22nd day of October, 2015.

Respectfully submitted,

**KREVOLIN & HORST, LLC**


/s/ Jonathan E. Hawkins
Jeffrey D. Horst
Georgia Bar No. 367834
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Jonathan E. Hawkins
Georgia Bar No. 338779
*Attorneys for Plaintiff*


1201 W. Peachtree Street, N.W.
Suite 3250, One Atlantic Center
Atlanta, GA 30309
(404) 888-9700
(404) 888-9577 (facsimile)
Horst@khlawfirm.com
Hknapp@khlawfirm.com
Hawkins@khlawfirm.com